UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-405-GWU

JASON BOWLING, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Jason Bowling, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar and cervical spine, anxiety, and depression. (Tr. 14). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Bowling retained the residual functional capacity to perform his past relevant work as an assembler, and therefore was not entitled to benefits. (Tr. 17-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. He: (1) could no more than frequently climb, stoop, kneel, crouch, and crawl; and (2) was limited to no more than simple instructions in object-focused, non-public settings with no more than occasional changes in work settings and routines. (Tr. 34-5). The VE responded that such a person could perform Mr. Bowling's past relevant work as an assembler, although he had previously testified that this work had been performed at the "medium" exertional level.[1] In any case, the VE

[1]He appeared to indicate that the Dictionary of Occupational Titles (DOT) classified the job as "light." (Tr. 34).

proceeded to identify other jobs existing in the economy which such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 35).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. Because the mental factors cited in the hypothetical question are deficient, a remand will be required for further consideration.

There is an additional issue regarding the plaintiff's eligibility for DIB. Mr. Bowling's Date Last Insured (DLI) for DIB purposes was December 31, 2002 (Tr. 109), meaning that he was required to establish disability prior to that date. His SSI application is not affected, although he would not be eligible for benefits prior to the date of his application, August 3, 2007. (Tr. 98-100). The plaintiff presented no significant evidence of disability prior to the DLI, and indicated at the January 21, 2009 administrative hearing that he had last worked "about two years ago." (Tr. 27). The ALJ noted that Mr. Bowling had earned between $2,000.00 and $3,000.00 in both 2005 and 2006, and determined that it was not "substantial gainful activity." (Tr. 14). In any case, the lack of evidence of restriction prior to the DLI is dispositive of the DIB claim. Therefore, the portion of the administrative decision denying the DIB application will be affirmed.

Turning to the SSI portion of the claim, the ALJ's physical restrictions are supported by the report of a consultative examiner, Dr. Robert Hoskins, and by a

state agency reviewing physician, Dr. Jorge Baez-Garcia, who reviewed much of the medical evidence on January 11, 2008. Although the plaintiff had extensive emergency room treatment, as well as some treatment by a neurologist and a specialist in pain management in addition to his primary care sources, Dr. Hoskins and Dr. Baez-Garcia were the only medical professionals to give an opinion as to his functional restrictions.

Dr. Hoskins examined the plaintiff on October 10, 2007 and reviewed an MRI scan of the lumbar spine showing bulging discs. (Tr. 461). He noted the plaintiff's complaints of lower back pain radiating into the right leg with occasional loss of sensation, but noted that the plaintiff was well developed and had nothing about him that looked unhealthy. (Tr. 461-2). On physical examination, Mr. Bowling reported lumbar tenderness, but there was no spasm to palpation and he was able to bend forward 60 degrees at the waist. (Tr. 462). His gait was somewhat slow with a shortened stride and a mild limp which was more noticeable in the office than in the waiting room. (Id.). There was no sensory deficit. Dr. Hoskins assessed chronic back pain, anxiety, bulging discs with moderate narrowing at the L5-S1 level and "possible radicular symptoms, but the complaint of numbness in all toes does not follow a specific dermatome." (Id.). He felt that on the basis of the limp and shortened stride, the plaintiff would "likely" have some difficulty with walking and he "reports impairments that would limit lifting, carrying, bending, stooping, kneeling [and] climbing" but the physician was "not certain that he is strongly limited in regard

to the above activities." (Id.). Dr. Hoskins further stated that Mr. Bowling "may have difficulty with heavy lifting, heavy labor, frequent stooping, bending[,] squatting and crawling." (Id.). Given the lack of specificity in these limitations, the hypothetical question was consistent.

In addition, Dr. Baez-Garcia specifically found limitations to light level exertion with only occasional climbing of ladders, ropes, and scaffolds, stooping, and crouching. The hypothetical question was consistent with these factors.

The evaluation of the plaintiff's mental restrictions is more problematical.

Mr. Bowling was given a consultative psychological evaluation by Dr. Timothy Baggs on October 11, 2007. He stated that he was unable to work because of his nerves as well as his back, and could not stand being around other people. He was reportedly able to carry out household activities, but stated that he did not like driving, rarely went anywhere, and had few interactions with family members or neighbors. (Tr. 471). He perceived himself as having difficulty sustaining attention and pace in the work environment, and stated that he had dropped out of school in the eighth grade. (Tr. 469, 472). He appeared anxious, sad, and worried. (Tr. 472). Dr. Baggs estimated that his intellect was in the low average range. (Tr. 473). On testing, he noted there were some concentration difficulties. (Id.).

Dr. Baggs diagnosed a panic disorder with agoraphobia and a depressive disorder. He opined that the plaintiff needed psychological treatment. (Tr. 474). In terms of restrictions, he felt that Mr. Bowling could understand and remember

simple instructions, but appeared to have some deficiency in being able to maintain sustained concentration and persistence in the completion of tasks in a normal amount of time. He also appeared to be having difficulty effectively relating in social situations due to anxiety and problems adapting and responding effectively to pressures found in normal work settings. (Id.).

State agency psychologists Edward Stodola and Jane Brake reviewed the evidence and concluded that the plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 503-4, 516-17). They stated that he was able to understand, remember, and carry out simple instructions for two-hour segments over an eight-hour workday, five days a week, could relate adequately in the object-focused, non-public settings, and adapt to the changes and pressures of a routine setting.

The ALJ noted the conclusions of Dr. Baggs and the state agency experts without specifically indicating that he gave more weight to one or the other. (Tr. 16, 18). However, both the examiner and the non-examiners indicated that there would be limitations on concentration. The Sixth Circuit of Appeals has recently found that a limitation to no more than simple, routine, unskilled work is not sufficient to convey limitations in concentration, persistence, and the ability to keep pace. Ealy v. Commissioner of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010). Since the

fact of the plaintiff's limitation in this area is uncontradicted, a remand will be required for further consideration of the plaintiff's mental restrictions.

Turning briefly to the plaintiff's other arguments on appeal, the ALJ's determination that Mr. Bowling's testimony was not wholly credible is reasonably well supported by the ALJ's discussion, including indications of non-compliance and physical activities. (Tr. 18). The ALJ adequately considered the plaintiff's impairments in combination. (Tr. 16). Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Finally, the plaintiff's argument that the ALJ did not give sufficient deference to treating physician opinions is without merit, since he failed to identify any treating physician opinion.

The decision will be remanded for further consideration in accordance with this opinion.

This the 15th day of September, 2010.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**